## Appeal of MIDLAND COAL CO.                         Docket No. 27

A deduction for a bad debt properly determined to be worthless and written off as such should not be disallowed merely because the creditor thereafter advanced other moneys to the debtor for a new venture.

Submitted November 15, 1924; decided January 13, 1925.

*Maurice H. Winger* and *Franklin C. Parks, Esqs.,* for the taxpayer.

*A. C. Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal was heard on November 14, 1924, upon a stipulation of facts and certain exhibits filed, from which the Board makes the following

### FINDINGS OF FACT.

1. During the years 1917, 1918, and 1919 the taxpayer was engaged in the business of selling coal at wholesale. The taxpayer owned no mines but made contracts with certain producing companies for their output. It was customary for the taxpayer to loan money to the producing companies in order to enable them to meet their pay-roll obligations and other operating expenses.

2. The taxpayer had obligated itself to take the entire output of coal mined by the Cameron Coal Co. during the years 1917 and 1918. During the year 1917 the taxpayer made cash advances to the Cameron Coal Co. aggregating the sum of $10,517.78. At the close of the year 1917 the accounts of the taxpayer showed a debit balance against the Cameron Coal Co. of $9,517.78 for money advanced. No cash advances were made by the taxpayer to the Cameron Coal Co. during the year 1918, but interest on the debit balance was charged to the account in the aggregate sum of $810.12, of, which $524.84 was, on August 10, 1918, paid to the taxpayer. At the close of the year 1918 the accounts of the taxpayer showed a debit balance of $9,803.32, against the Cameron Coal Co., which was to have been offset by coal deliveries, but such deliveries during the year 1918 had not materialized in sufficient amount to offset the advances so made.

3. During the year 1918 the taxpayer received from the Cameron Coal Co. $131,234.95 worth of coal for which it paid as received.

4. At the end of 1918 the assets of the Cameron Coal Co., aside from its investments in equipment and development and its leases, were insufficient to meet its outstanding preferred liabilities. Its investments in equipment and development had become valueless because coal had been taken out too close to the mouth of the mine and caused difficulty in proper operation, and the leases of the Cameron Coal Co. appeared to the taxpayer to be worthless by reason of the fact that the mine could not be economically operated. At the end of 1918 the Cameron Coal Co. showed an operating deficit of $37,229.05 as against capital stock of $30,000.

5. At the end of 1918 the taxpayer charged off on its books the indebtedness to it of the Cameron Coal Co. in the sum of $9,803.32 as a worthless debt and claimed a deduction therefor on its income and profits tax return for 1918. This deduction was disallowed by the Commissioner and such disallowance forms the basis for this appeal.

6. In February, 1919, and during later portions of 1919, the taxpayer made other cash advances to the Cameron Coal Co. for the purpose of enabling it to open up a new mine which could be operated more economically and profitably.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be made on consent or on seven days' notice in accordance with Rule 50.

### OPINION.

IVINS: There seems to be a slight error in the entries which gave rise to the stipulation of facts. The Cameron Coal Co. at the end of 1917 owed the taxpayer the sum of $9,517.78 for money loaned. During 1918 interest amounting to $810.12 was added and a payment of $524.84 was credited against such interest. This as we compute it would leave a balance of principal and interest of $9,803.06 rather than $9,803.32, the amount shown by the taxpayer's books according to the stipulation. Of this amount $9,517.78 was for money advanced and $285.28 for balance of interest charged.

At the end of 1918 the debtor company had accumulated a deficit in excess of its capital stock and preferred liabilities in excess of its liquid assets; and its remaining assets to which the taxpayer would have to look for repayment of its loan consisted of the investment in a mine which had been so improperly developed that it could not be economically operated, and a leasehold interest in the land upon which the mine was, which lease obviously would be worthless in the circumstances, unless in addition to the existing mine it covered property other than the bad mine—a fact which has not been made to appear. The taxpayer at the end of 1919 regarded its claim against the Cameron Coal Co. as worthless and wrote it off as a bad debt.

Thereafter, in 1919, the taxpayer made other advances to the Cameron Coal Co. for the purpose of enabling it to make a new opening through which it might take coal more economically than through the abandoned mine. It does not appear from the record whether the new advances were repaid, though counsel for the taxpayer admitted in the argument that at least to some extent they were taken up in the deliveries of coal by the Cameron Coal Co. to the taxpayer. No evidence was submitted on the part of the Commissioner that any part of the debt written off in 1918 was ever recovered by the taxpayer.

The Commissioner contends that if the taxpayer in February and later in 1919 regarded the Cameron Coal Co. as worthy of credit for new advances, it could not in good faith have regarded this claim at the end of 1918 as having been worthless on December 31. In this we can not agree. In all the circumstances the taxpayer was justified in regarding the debt as worthless at December 31, 1918, and in writing it off as was done. Subsequently the Cameron Coal Co. suggested to the taxpayer a new venture—the opening of a new pit which might prove economical of operation and might create a source of supply of the product dealt in by the taxpayer and possibly result in a sufficient recovery by the debtor to enable it to pay off part or all of its old indebtedness. The taxpayer was

willing to take a chance, but this fact—its willingness subsequent to the writing off of the bad debt to risk more good money after bad—does not necessarily prove that the old debt was not bad, nor that it was not written off as such in good faith. We think that the deduction should be allowed.

It is noted that of the indebtedness written off, $285.28, was for interest. It does not appear whether the taxpayer reported on the accrual basis and had returned this item as income or reported as a cash basis and had not returned it. If the latter, the amount of interest should be excluded from the deduction.. (See *Appeal of Charles A. Collin*, 1 B. T. A. 305.)